```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
                                           :
METROM RAIL, LLC,                          :
                                           :
                          Plaintiff,       :
                                           :      25cv10417 (DLC)
             -v-                           :
                                           :      OPINION AND
PIPER NETWORKS, INC.,                      :         ORDER
                                           :
                          Defendant.       :
                                           :
------------------------------------------ X
```

APPEARANCES:

For plaintiff Metrom Rail, LLC:

Gregory C. Schodde
Rajendra A. Chiplunkar
Christian H. Hallerud
Andrew W. Mills
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, Illinois 60661

For defendants Piper Networks, Inc.:

Nicole S. Cunningham
Wisnia PC
2869 Historic Decatur Road
San Diego, CA 92106

Howard N. Wisnia
Wisnia PC
12636 High Bluff Drive, Suite 400
San Diego, CA 92130

DENISE COTE, District Judge:

Metrom Rail, LLC ("Metrom") has brought patent infringement claims against Piper Networks, Inc. ("Piper") under two of its patents. Both companies provide train positioning and safety

systems using Ultra Wide Band ("UWB") technology and bid on projects providing such services to railroad and mass transit systems nationwide.  Metrom has sued Piper for its design and implementation of one such safety system for the Massachusetts Bay Transit Authority ("MBTA").  Piper moves to dismiss the complaint for failure to state a claim.  After the motion became fully submitted, the Federal Circuit issued an opinion finding all claims of one of the patents at issue unpatentable. Metrom's infringement claim under that patent is dismissed as moot, whereas Metrom's infringement claim under the remaining patent survives.

## Background

The following facts are drawn from the Second Amended Complaint ("SAC"), the documents attached thereto, as well as official Patent Trial and Appeal Board documents and court filings in another infringement action brought by Metrom in this district.[1]  For the purposes of deciding this motion, the SAC's

---

[1] In reviewing a motion to dismiss for failure to state a claim, the court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice."  United States v. Strock, 982 F.3d 51, 63 (2d Cir. 2020) (citation omitted).  In particular, the prosecution history of a patent, including any proceedings before the PTAB such as inter partes review, is "part of the intrinsic record of the patent and is a matter of public record" and "thus subject to judicial notice."

factual allegations are accepted as true, and all reasonable inferences are drawn in Metrom's favor.

Metrom develops railroad collision avoidance systems using UWB technology.  Metrom obtained patents on its systems, including the one patent at issue in this matter: U.S. Patent No. 9,731,738 ("the '738 Patent").[2]  The '738 Patent was filed in 2015 and issued in 2017.  The '738 Patent's abstract states:

> A system for vehicle management includes a control signal interface subsystem and a vehicle-mounted subsystem.  Each of these subsystems includes an ultra-wideband (UWB) communications component.  The subsystems communicate with each other through the UWB components.  The vehicle mounted subsystem interfaces with a braking system of the vehicle.  The vehicle mounted subsystem determines the distance between it and the control signal interface subsystem based on the time-of-flight of at least one communication between the subsystems.  The vehicle-mounted subsystem can cause the

---

Uniloc USA, Inc. v. ADP, LLC, 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) (citation omitted).

[2] Metrom originally asserted that Piper infringed a second patent as well: U.S. Patent No. 9,043,131 ("the '131 Patent").  Claims under the '131 Patent were included in the Complaint, First Amended Complaint, and SAC, and arguments for its dismissal were included in the motion to dismiss.  On May 11, 2026, the Federal Circuit issued an opinion and judgment finding all claims of the '131 Patent unpatentable.  See Metrom Rail, LLC v. Siemens Mobility, Inc., et al., Nos. 2024-2223, 2024-2236, 2024-2264, 2026 WL 1295229, at *1 (Fed. Cir. May 11, 2026).  In a joint letter of May 18, the parties indicated that this "recent ruling, unless it is withdrawn or modified, will moot the arguments concerning the '131 Patent because that patent will no longer be assertable."  Thus, the '738 Patent is the only patent that remains at issue in this matter.

> braking system of the vehicle to activate if the distance between the vehicle-mounted subsystem and the control signal interface subsystem is less than a threshold.

This patented system is primarily used to prevent collisions between passenger trains.  In this system, UWB units installed on the train cars (i.e., carborne "tags") and throughout the rail system (i.e., "anchors," or "wayside equipment") are used to identify each train car's absolute and relative positions.

On October 16, 2016, the MBTA, which provides public transit services in parts of Massachusetts and Rhode Island, issued a Request for Proposal ("RFP"), RFP 24-16, for a light rail collision avoidance system to be installed on its "Green Line" subway line.  Metrom partnered with another company, Parsons Transportation Group, Inc., to submit a bid but the project was awarded to another team, BBR Verkehrstechnik/United Rail.  The MBTA eventually cancelled the project.

Almost eight years later, on June 7, 2024, the MBTA issued another RFP, RFP 80F-24, for a "stand-alone, non-vital overlay system to provide a Green Line Train Protection System" ("GLTPS").  The RFP noted that "[t]he primary functions of this system are to prevent train to train collisions and to stop Green Line Vehicles before they pass a Red Signal" and required the contractor to "[d]esign, integrate, manage, and supply" the system, including the "GLTPS carborne kits," "back-office

4

equipment," and "wayside equipment."  It also specified that "[t]he train protection system must be in accordance with Technical Specification VE-24-056" and that "[o]nly [bids] in accordance with the specifications and submission requirements stated herein will be considered."  Metrom does not allege to have submitted a bid in response to RFP 80F-24.

On February 26, 2025, the MBTA Board of Directors approved a $113 million contract with defendant Piper to deliver its GLTPS.  Piper is another company that provides rail positioning and safety systems.  One of the products Piper offers is its Automatic Train Protection-Overlay ("ATP-O") solution, a safety system that can be added to existing railway infrastructure and signaling systems.  The ATP-O utilizes Piper's Rail Positioning System ("RPS"), which uses UWB units placed on train cars and throughout the rail system to determine train location and prevent collisions.

On May 21, 2025, Metrom filed its original Complaint in this matter in the U.S. District Court for the District of Massachusetts, alleging that both Piper and the MBTA infringed its '738 Patent.  Specifically, the Complaint alleged that Piper directly infringed the two patents by offering, selling, making, and using the Piper GLTPS, and that the MBTA directly infringed the patents by using the Piper GLTPS.

On July 23, 2025, Piper moved to dismiss the Complaint in this action for failure to state a claim or, alternatively, to transfer venue to the Southern District of New York.[3]  On the same day, the MBTA separately moved to dismiss the Complaint for failure to state a claim and, on September 24, the MBTA moved to sever its claims from the claims against Piper and stay its claims until final judgment was entered against Piper.  On December 8, the District of Massachusetts granted Piper's motion to transfer to the Southern District of New York, denied Piper's motion to dismiss without prejudice, and granted the MBTA's motion to sever and stay.  The claims against Piper were then transferred to this Court.

On February 13, 2026, Metrom filed a First Amended Complaint alleging claims against both Piper and the MBTA. Metrom, on February 27, acknowledged that the MBTA is not a party to this action and, on March 4, filed the SAC only asserting claims against Piper.  The SAC, like its predecessors, alleges that "[t]he Piper RPS, and Piper's implementation of such system on the MBTA Green Line (i.e., the GLTPS), presently infringes, and will continue to infringe" Claim 1 of Metrom's '738 Patent.  Metrom seeks damages and an order "requiring

---

[3] A related case was pending in this district and assigned to this Court (Metrom Rail v. Hitachi Rail GTS USA Inc., et al., 23cv2920).

Defendant to notify any United States transit agency to which Defendant submits a bid that includes UWB train control equipment of this Court's order and injunctions."

On March 6, Piper renewed its motion to dismiss for failure to state a claim.  Metrom opposed the motion on March 27.  Piper filed its reply on April 10, and the motion became fully submitted.

As previewed above, the only claim that remains at issue in this action is Claim 1 of the '738 Patent, which reads as follows:

> **1.** A system for evaluating vehicle operation compliance, wherein the system comprises:
>
>   a control signal interface subsystem; and
>
>   a vehicle-mounted subsystem configured to:
>
>     communicate with the control signal interface subsystem to receive information corresponding to a status of a control signal;
>
>     determine a rule for behavior of a vehicle according to the information corresponding to the status of the control signal; and
>
>     observe operation of the vehicle to evaluate compliance with the rule;
>
>   wherein:
>
>     the control signal interface subsystem comprises an ultra-wideband (UWB) communications component;

> the vehicle-mounted subsystem comprises an ultra-wideband (UWB) communications component; and
>
> the vehicle-mounted subsystem and the control signal interface subsystem are further configured to communicate UWB signals carrying data pertinent to evaluating vehicle operation compliance, the data comprising at least one of: a unique ID associated with the vehicle-mounted subsystem, a signal indication, a track number, a track direction, speed, and direction of travel.

## **Discussion**

"To survive a motion to dismiss, a complaint must state a claim for relief that is at least plausible." Adnexus Inc. v. Meta Platforms, Inc., 160 F.4th 1216, 1220 (Fed. Cir. 2025). That standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The Federal Circuit has developed more specific guidelines for evaluating a motion to dismiss patent infringement claims. Id. at 1221 ("We apply our own law to the specific question of whether a complaint states a claim of patent infringement on which relief may be granted." (citation omitted)). Specifically, "[a] plaintiff is not required to plead infringement on an element-by-element basis." Id. (citation omitted); see also Bot M8 LLC v. Sony Corp. of Am., 4 F.4th

1342, 1352 (Fed. Cir. 2021) ("To the extent [district courts] have adopted a blanket element-by-element pleading standard for patent infringement, that approach is unsupported and goes beyond the standard the Supreme Court articulated in Iqbal and Twombly."). "Instead, it is enough that a complaint places the alleged infringer on notice of what activity is being accused of infringement." Adnexus, 160 F.4th at 1221; see also Bot M8, 4 F.4th at 1353 ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007))).

To be sure, "reciting the claim elements and merely concluding that the accused product has those elements" is insufficient. Bot M8, 4 F.4th at 1353. "There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Adnexus, 106 F.4th at 1221 (citation omitted). The level of detail required to do so "will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." Bot M8, 4 F.4th at 1353.

Here, the SAC gives Piper fair notice of the patent infringement claims Metrom is pursuing under Claim 1 of the '738 Patent, as well as the grounds for that claim.  Thus, the SAC easily satisfies the pleading standard and survives Piper's motion to dismiss.

The SAC pleads that the Piper GLTPS was designed and implemented in accordance with the requirements outlined in the MBTA's Technical Specification.  The RFP repeatedly states that compliance with the Technical Specification is mandatory, specifying that "[t]he train protection system must be in accordance with Technical Specification VE-24-056" and "[o]nly [bids] in accordance with the specifications and submission requirements stated herein will be considered."  The Technical Specification document also notes that its purpose is to "establish[] and control[] both the specific and general design parameters for the procurement of a train protection system for use on the [MBTA] Green Line" and lists hundreds of "system requirements," "carborne requirements," and "wayside requirements."  It is reasonable to infer from the mandatory language in these documents, as well as the MBTA's acceptance of Piper's bid and award of the $113 million contract to Piper that "Piper has implemented the Piper GLTPS on the MBTA Green Line as specified in the Technical Specification."  Requiring any more

10

at this stage would run afoul of the Federal Circuit's repeated entreaty that "patentees need not prove their cause at the pleading stage."  Bot M8, 4 F.4th at 1346.

Piper argues that this Court should disregard Metrom's allegations about what it "believes" discovery will show, to wit, that Piper's system actually infringes the '738 Patent. The specific details of the Piper GLTPS's design and implementation, however, are "peculiarly within [Piper's] possession and control," as Piper's GLTPS bid was confidential and Metrom does not have access to Piper's internal documentation.  See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted).  Considering the full range of the SAC's factual allegations, including the allegations based on the Technical Specification and the requirement that a bidder comply with the Specification, the SAC plausibly alleges infringement.  As already explained, it is reasonable to infer that Piper's GLTPS complied with the mandatory requirements the MBTA imposed for its Green Line Train Protection System.  The SAC's additional assertion that Metrom believes that discovery will prove that to be so is not a basis for dismissal of the SAC.[4]

---

[4] The parties will have an opportunity to address the impact of the Federal Circuit's invalidation of the '131 Patent on the '738 Patent.

11

## Conclusion

Piper's March 6, 2026 motion to dismiss is denied in part. Metrom's claim under the '738 Patent survives, and Metrom's claim under the '131 Patent is dismissed as moot.

Dated:    New York, New York
          May 20, 2026

_____
DENISE COTE
United States District Judge